IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIAMS, COHEN & GRAY, INC., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-3718 |
| | § | |
| CPS GROUP, INC. d/b/a Cynergy Data, | § | |
|     Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiff Williams, Cohen, & Gray, Inc.'s ("WC&G") Motion to Compel [Doc. # 24] (the "Motion"), asking that Defendant CPS Group, Inc. ("CPS") be ordered to supplement several of its responses to WC&G's interrogatories.[1] CPS has responded [Doc. # 25], and the Motion is ripe for disposition.

WC&G's first Request for Production asks for "payment histories . . . on all accounts [CPS] placed with [WC&G]." CPS asserts that WC&G already possesses the account histories. The request, however, specifically is for discovery on whether work CPS performed on these accounts resulted in payments to CPS *after* the accounts were taken from WC&G. This information does not appear otherwise available to WC&G and is "relevant

---

[1] WC&G also asserts that CPS's discovery responses were not properly verified. It contends that the responses, signed by Kim Marvin, verified that the information therein was true "to the best of my information, knowledge and belief." WC&G contends that this verification fails the "personal knowledge requirement" of Federal Rules of Evidence 601 and 602. But WC&G does not elaborate, and has not shown that the interrogatory responses actually contained information beyond Marvin's knowledge. Insofar as WC&G is asking that CPS be compelled to provide further verification of its responses, that request is **denied**.

to the subject matter involved in this action" or is "reasonably calculated to lead to the discovery of admissible evidence." *See* FED. R. CIV. P. 26(b)(1). WC&G is entitled to the post-removal payment history on each account transferred to CPS.

CPS also objects to providing hard copies of the post-removal payment information and instead offers to make its database available to WC&G in New York. It is far from clear that CPS would allow opposing counsel or their client free access to CPS's active database, or should do so. This suit, WC&G and counsel for both parties are in Houston. Production must be made in Houston, but the parties should attempt to arrange for the materials to be produced electronically. The parties therefore are directed to confer and determine how CPS shall make this production, whether by downloading a copy of the responsive information onto a portable memory device (*e.g.*, a memory key or diskettes) or some other method. Production shall be made within fourteen days of entry of this Order. The record contains no indication that this information would not be "reasonably accessible" electronically, or that gathering and copying the information electronically will cause "undue burden" on CPS. At this stage, therefore, the cost of gathering and copying this information electronically shall be borne by CPS. *See* Proposed FED. R. CIV. P. 26(b)(2) (eff. Dec. 1, 2006, absent contrary Congressional action).

WC&G also has requested, through an interrogatory, the identity of "each debtor that [CPS] placed with [WC&G] that has paid any money to [CPS] from May 2005 to the present, the amount of money paid, and when it was paid." CPS's response, according to

WC&G,[2] was that its "in-house collector, hired subsequent to [WC&G's] termination, has no recollection of making collection efforts on any of the accounts at issue in this dispute." CPS's objection is non-responsive and is not legally sufficient. CPS does not explain why it, through its electronic or hard-copy records, cannot respond to some or all of this interrogatory. CPS must respond to this interrogatory within fourteen days or lodge within three business days a legally sufficient objection.

WC&G also requests information about who at CPS "retained the collection agencies [CPS] has done business with from 2003 to the present." CPS's answer, according to WC&G, was simply that it "has no written agreement with McCarthy, Burgess and Wolff." WC&G apparently understands that McCarthy, Burgess and Wolff is a collection agency that fits its request, but contends that the discovery response, as represented in the Motion, is again non-responsive. The Court agrees. Accordingly, CPS must respond meaningfully to the interrogatory or make an appropriate objection within three business days.

WC&G asks, "Who at [CPS] reviewed [WC&G's] promotional materials between May and September of 2005?" In response to CPS's objection, WC&G now explains that "promotional materials" include brochures and "website access." This clarification appropriately limits the interrogatory and CPS shall respond to it.

Finally, in support of its liquidated damages claims, WC&G asked CPS to disclose what CPS has charged CPS's clients in termination fees. This may well be a burdensome

---

[2] Neither WC&G nor CPS have provided copies of the interrogatories or the responses to the Court. CPS does not specifically address this matter in its submissions to the Court.

request[3] and its relevance to the pending claims and defenses is not established. CPS is not required to produce this information unless WC&G demonstrates through a supplement to its Motion (to be filed within three business days of entry of this Order) why the information is relevant or "reasonably calculated to lead to the discovery of admissible evidence." *See* FED. R. CIV. P. 26(b)(1). CPS, within three business days thereafter, may file a more detailed objection to the supplemented interrogatory. If CPS contends the information is not reasonably accessible, it shall explain that objection as well.[4]

It is therefore

**ORDERED** that Plaintiff's Motion to Compel [Doc. # 24] is **DENIED in part** and **GRANTED in part**, as provided herein. It is further

**ORDERED** that if an objection or supplement is timely filed, the opposing party shall file a response thereto within three business days. The parties also promptly shall deliver copies of supplements, objections and responses to the Court's Chambers.

**SIGNED** at Houston, Texas, this **14th** day of **November, 2006**.

_____
Nancy F. Atlas
United States District Judge

---

[3] CPS's response was that it cannot "separately account for recovery of termination fees."

[4] If this information is available within the CPS post-account removal database or any other CPS reasonably accessible database, then it appears that the burden would be minimal.